UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL R. W.[1],

                Plaintiff,              Civil Action No. 24-10164

v.                                    David R. Grand
                                    United States Magistrate Judge[2]

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**OPINION AND ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT (ECF Nos. 12, 14)**

Plaintiff Daniel W. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Currently before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 12) and the Commissioner's Motion for Summary Judgment (ECF No. 14), as well as the administrative record (ECF No. 10).[3]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c). (ECF No. 8).

[3] Plaintiff also filed motion for leave to file excess pages, in which he requests 8 additional pages for his motion for summary judgment due to the lengthy transcript and procedural history, and represents that the Commissioner has consented to this motion. (ECF No. 11, PageID.2587). Accordingly, Plaintiff's motion for leave to file excess pages **(ECF No. 11)** is hereby **GRANTED**.

For the reasons set forth below, the Court finds that substantial evidence does not support the ALJ's conclusion that Plaintiff was not disabled under the Act since the date of his application. Accordingly, the Commissioner's Motion for Summary Judgment **(ECF No. 14)** is **DENIED**, Plaintiff's Motion for Summary Judgment **(ECF No. 12)** is **GRANTED** to the extent it seeks remand, and pursuant to sentence four of 42 U.S.C. § 405(g), the case is **REMANDED** for further proceedings consistent with this Opinion and Order.

I.  **Background**

Plaintiff filed his application for SSI in December 2019, at which time he was 51 years old, and alleged an amended disability onset date of February 5, 2010. (PageID.1601, 1944).[4] At 5'9" tall, he weighed approximately 155 pounds during the relevant time period. (PageID.1796). He completed education up to the tenth grade. (PageID.1797). He lives in a house with his family. (PageID.1827). He has no past relevant work. (PageID.1797-98). Plaintiff alleges a disabling condition of Barretts esophagus, high blood pressure, knee pain, liver failure, neuropathy, sciatica, shoulder pain, and stomach problems. (PageID.1796).

After Plaintiff's application for SSI was denied at the initial level on April 2, 2020, and upon reconsideration on July 27, 2021 (PageID.94-95), he timely requested an administrative hearing, which was held in person on November 28, 2022, before ALJ Ramona Fernandez (PageID.1549-79). Plaintiff, who was represented by attorney Randall

---

[4] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 10-1.

Phillips, testified at the hearing, as did vocational expert ("VE") Larissa Boase. (*Id.*). On December 9, 2022, the ALJ issued a written decision finding that Plaintiff was not disabled since the date of his application on December 18, 2019. (PageID.1522-36). On November 17, 2023, the Appeals Council denied review. (PageID.1513). Plaintiff timely filed for judicial review of the final decision. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, function and disability reports, and testimony as to his conditions and resulting limitations during the relevant time period. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

## II.   The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without

3

> further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff is not disabled under the Act. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of his application on December 18, 2019. (PageID.1524). At Step Two, the ALJ found that Plaintiff had the severe impairments of cirrhosis with esophageal varices, esophagitis, and Barrett's esophagus; polyneuropathy; right clavicle and rib fractures; right supraspinatus tendonitis; osteoarthritis/mild degenerative changes in the right hand; mild degenerative changes of the hips, sacroiliac joints, lower lumber spine, and left knee; alcohol use disorder; depression; anxiety; and

4

post-traumatic stress disorder ("PTSD"). (PageID.1525). At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (PageID.1525-27).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations:

> [Plaintiff can] occasionally climb, stoop, kneel, crouch, or crawl; never use ladders, ropes, or scaffolds; frequently reach to the front and side with the right dominant upper extremity, but only occasionally reach overhead with the right upper extremity; must avoid all exposure to extreme cold; must avoid concentrated exposure to vibration and wetness; must avoid all dangerous, moving machinery and work at unprotected heights and uneven terrain, but is capable of avoiding ordinary workplace hazards; capable of understanding, remembering and applying simple instructions; capable of managing occasional changes in a routine work setting; and is not capable of work requiring a specific production rate, such as assembly line or work requiring a specific hourly quota.

(PageID.1528).

At Step Four, the ALJ found that Plaintiff has no past relevant work. (*Id.*, PageID.1534). At Step Five, the ALJ found, based in part on the VE's testimony, that given Plaintiff's age[5], education, work experience, and RFC, he was capable of performing unskilled light work as a scrap sorter (200,000 jobs nationally), gluer (50,000 jobs), and inspector (200,000 jobs). (PageID.1535-36). Thus, the ALJ concluded that Plaintiff was not disabled under the Act. (PageID.1536).

---

[5] The ALJ also noted that Plaintiff was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed, and determined that a "borderline" age situation existed because Plaintiff was within a few months of attaining the next higher age category, but that use of the higher age category was not supported. (PageID.1534-35).

5

### III. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

IV.   **Analysis**

In his motion, Plaintiff argues that substantial evidence does not support the ALJ's finding that Plaintiff can frequently reach to the front and side. (ECF No. 12, PageID.2607-12).[6] In assessing Plaintiff's limitations in reaching, the ALJ reasoned:

> Lastly, due to residual upper extremity pain from his 2nd right rib and clavicle fractures, as well as instances of limited right shoulder range of motion noted during physical exams, he can only frequently reach to the front and side with the right dominant upper extremity and only occasionally reach overhead with the right upper extremity. Additional limitations beyond these, however, are not warranted. . . . As for his right upper extremity impairments, records note routine healing with respect to the right clavicle and Dr. Limbert indicated he was pleased with the alignment of the clavicle on follow-up x-ray in January 2020. Updated imaging has also shown the 2nd right rib fractures have healed. The claimant was also able to ride his bike after sustaining these

---

[6] Plaintiff also argues that the ALJ erred in (1) concluding that he does not have any limitations associated with his right hand; (2) failing to properly evaluate his subjective complaints and testimony; (3) erroneously applying age categories mechanically in a borderline situation; and (4) failing to satisfy the burden of establishing that there is other work in the national economy that Plaintiff could perform. (ECF No. 12, PageID.2607-22). Because the Court finds that remand is warranted on other grounds, it need not discuss in detail the merits of these arguments. On remand, however, the ALJ should give full and fair consideration to these issues.

7

      injuries, which would require some level of upper extremity use to control the steering handles.

(PageID.1531-32).

Based on the above, Plaintiff argues that the ALJ's decision does not reasonably account for the full extent of the impairments in his right upper extremities in light of the record as a whole, and instead reflects a selective reading of the medical evidence. (ECF No. 12, PageID.2607-16). The Commissioner responds that the medical record evidence fails to support Plaintiff's assertion that he required greater limitations than the ALJ assessed, and that his arguments "generally amount to a request to reweigh the evidence in his favor." (ECF No. 14, PageID.2631-34). Plaintiff replies that the ALJ's decision "does not accurately portray the record as a whole," and it fails to "account for key evidence" of several inconsistencies in the record. (ECF No. 16, PageID.2653-55). For the reasons detailed below, the Court finds that the ALJ's conclusion with respect to Plaintiff's reaching limitations is not supported by substantial evidence.

The medical record reflects that, on December 9, 2019, Plaintiff was involved in a physical altercation with his brother and that he sustained a distal third clavicle fracture and rib fractures on his right side, which caused significant pain to Plaintiff's shoulder and forearm. (PageID.2221, 2225; *see also* PageID.2194, 2197). In concluding that Plaintiff did not require greater limitations than "frequent" reaching to the front and side with the right upper extremity, the ALJ first reasoned that the medical evidence indicated Plaintiff's right clavicle was properly aligned and routinely healing, citing to a treatment note with Dr. Limbert on January 24, 2020, and a treatment note at the Baldwin Family Medicine

8

Center ("BFMC") on September 9, 2020. (PageID.1532). This reasoning is problematic because the ALJ failed to meaningfully discuss significant evidence to the contrary in both the treatment notes she cited in support of her reasoning, as well as other evidence in the record.

For instance, the ALJ reasoned that, on January 24, 2020, Dr. Limbert found that Plaintiff had a "[s]table distal one third clavicle facture of the right clavicle," and noted he was "pleased with the alignment of the clavicle on the patient's x-rays . . ." (PageID.2225-26). However, during that same visit, Dr. Limbert also documented that Plaintiff had been wearing a sling since his fracture, that Plaintiff should "continue wearing a sling for comfort and continue taking over-the-counter pain medications as needed," and that Plaintiff was scheduled for a follow-up visit in four weeks but "is going to return sooner if he has any problems." (PageID.2226). BFMC treatment records reflect that Plaintiff experienced severe enough problems that he required an office visit less than 2 weeks later on February 6, 2020, complaining about pain, numbness, and a "burning feeling that goes from his shoulder blades up to his neck, numbness on the right hand (pinky, ring finger)." (PageID.2291). During this office visit, Plaintiff reported that he was told by orthopedics that "*his pain is related to the position the clavicle fixed itself*," that he continued to experience pain on the right medial border of the scapula radiating to his neck, numbness and tingling on the 4th and 5th digit of his right hand, and that he had to wear a sling to alleviate his symptoms. (*Id.*) (emphasis added). A physical exam indicated limited range of motion ("ROM") with abduction of the right shoulder and reproducible pain with pulling motion of his arm, no handgrip weakness, and positive Hawkins and empty can tests.

(PageID.2294).

Moreover, while the ALJ reasoned that a subsequent treatment note at BFMC on September 9, 2020, assessed a "[c]losed nondisplaced fracture of shaft of right clavicle with routine healing," and noted that "[p]revious X-rays have demonstrated appropriate healing" (PageID.2264), the ALJ failed to reconcile these findings with Plaintiff's reports of "persistent paresthesias in bilateral upper extremities radiating down bilateral forearms into hands, worse on [right] side," as well as "shooting pain" and a "numbness/pins and needles sensation" radiating from his neck. (PageID.2260). Most importantly, this same treatment note indicates that Dr. Matthew Lawson, D.O., assessed that Plaintiff should "[c]onsider repeat X rays in the next 3-6 months" of his right clavicle (PageID.2264), and the medical record contains an imaging report of an updated x-ray of Plaintiff's shoulder taken on September 19, 2022, at the Trinity Health Emergency Center, which revealed a significant contrary finding that Plaintiff had a "*[c]hronic fracture deformity of the distal right clavicle.*" (PageID.2576) (emphasis added). In other words, subsequent x-rays found that Plaintiff had a persistent abnormality in the shape or alignment of his distal right clavicle because his fracture may *not* have healed properly, but the ALJ failed to discuss this conflicting evidence.

While it is true that the ALJ need not discuss every piece of evidence in the record, *Kornecky*, 167 F. App'x at 508, her discussion must be thorough enough to enable the Court to determine whether the ALJ's findings are supported by substantial evidence. *See Trudell ex rel. Bushong v. Apfel*, 130 F. Supp. 2d 891, 895 (E.D. Mich. 2001) ("'Substantiality of the evidence must be based upon the record taken as a whole.

10

Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'"); *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) ("a substantiality of evidence evaluation does not permit a selective reading of the record"). Here, in light of the foregoing, the Court cannot say that the ALJ's conclusion that Plaintiff's right clavicle was properly aligned and healed is supported by substantial evidence.

Second, the ALJ concluded that Plaintiff did not require additional reaching limitations because "[u]pdated imaging has also shown the 2nd right rib fractures have healed," citing to the Trinity Health Emergency Center imaging report on September 19, 2022. (PageID.1532). A similar flaw exists here in the ALJ's reasoning. While it is correct that an x-ray in September 2022 found Plaintiff had a "[r]emote healed fracture of the second right rib" (PageID.2576), that same x-ray also found a "[m]ild cortical angulation of the lateral right seventh rib" significant enough for a "[s]uspected acute fracture of the lateral right seventh rib" (PageID.2584). Thus, in concluding that Plaintiff did not require additional reaching limitations because updated imaging showed his second right rib fracture has healed, the ALJ failed to reconcile such conclusion with significant evidence to the contrary in that same x-ray showing a suspected acute fracture of his right seventh rib, which again reflects an impermissible selective reading of the record. Accordingly, the Court cannot say this aspect of the ALJ's decision is supported by substantial evidence.

Third, the ALJ reasoned that Plaintiff did not require greater limitations in reaching because he "was also able to ride his bike after sustaining these injuries, which would

11

require some level of upper extremity use to control the steering handles," citing to several mental health treatment notes with Easter Seals between April to July of 2020. (PageID.1532). Specifically, Easter Seals treatment notes reflect that, on April 22, 2020, Plaintiff reported that "he's using his bike as a coping mechanism" for his depression, but his pain levels "vary at a 10/10 or lower depending on physical exertion." (PageID.2390). On May 1, 2020, Plaintiff reported that he "has been utilizing his bike to keep his spirits up" (PageID.2376), and on June 9, 2020, the clinician discussed ways to cope with Plaintiff's depression, which included "bike rides/time in nature." (PageID.2369). However, on June 23, 2020, Plaintiff presented with complaints of acute pain "which he sustained in a bicycle accident two days prior to this interview" when he "struck a tree branch which knocked [him] off his bike," and he thought he "fractured one or more ribs, messed up his right shoulder, and states that he has 2 round type balls on his chest" – none of which was addressed by the ALJ. (PageID.2366).

Thereafter, on July 20, 2020, it was noted under the "History" of Plaintiff's present illness that he "tries to ride bike daily to get exercise," but that he also "finds in difficult to fall asleep and stay asleep due to shoulder pain." (PageID.2350). More importantly, none of Plaintiff's subsequent Easter Seals treatment notes indicate he rode his bike again. On the contrary, they document worsening physical symptoms and pain suggesting that he was prevented from continuing to do so. For example, on August 6, 2020, Plaintiff reported that "he has been experiencing sleepless nights, and has a lot of pain especially in his

12

joints,"[7] and that he would like to "explore ways in which he can relieve his pain." (PageID.2349). On August 31, 2020, it was noted that Plaintiff's clinician discussed "[w]ays to cope" with his anxiety and distress, but this time including only "*going for walks and praying,*" and not riding his bike as he had done previously. (PageID.2347) (emphasis added). On September 2, 2020, Plaintiff presented as "sleepy," he reported that "he has been experiencing difficulties staying asleep," and that he "just went to his PCP yesterday . . . who examined [his] wrist for a possible fracture and wants [him] to get X-rays taken of his right wrist." (PageID.2345). The Easter Seals clinician further noted that Plaintiff's "wrist was noticeably swollen and looked painful to writer, encouraging individual to have it looked after." (*Id.*). On September 3, 2020, Plaintiff reported that "he has tingling in his right hand and that he was told to go see someone about it," and "he is frustrated by being in chronic pain." (PageID.2343). On September 15, 2020, Plaintiff stated that "he *wants* to go ride his bike and go fishing to cope,"[8] but not that he had been engaging or was capable of engaging in those activities, and that his "right hand is swollen, he got an x-ray,

---

[7] Medical records reflect that Plaintiff's shoulder pain negatively affects his ability to sleep. For instance, on January 9, 2020, Plaintiff reported "difficulty getting comfortable when he goes to bed at night" due to "shoulder blade pain" on the right side and "stabbing pain on the lateral aspect of his right shoulder," and that "the medication seems to wear off before he gets to sleep." (PageID.2176). Plaintiff's function report similarly indicates that pain in his shoulder affects his sleep. (PageID.1809).

[8] Plaintiff's function report indicates that his hobbies included "fishing," but that he has not been able to fish "in a while" (PageID.1812), and that he tries to go outside everyday but indicated that he can only "Walk" and does not "Ride a bicycle." (PageID.1811, 1832). Moreover, while Plaintiff's function report dated January 3, 2020, indicated that he could at one point do some house and yard work like "cleaning," "laundry," "dish's," and "cutting grass" (PageID.1810), his function report dated May 14, 2021, indicates that he is unable to any house and yard work because "my body hurts all the time" (PageID.1831).

13

and it was concluded that he has bad arthritis" and he has to "wear a brace when it flairs up." (PageID.2341) (emphasis added). On October 15, 2020, Plaintiff "presented as stating that he hasn't slept but a few hours in the last couple of days," and that on October 30, 2020, Plaintiff "appeared to have been sleeping and took a few minutes to get going." (PageID.2331). On November 5, 2020, it was noted that Plaintiff "took several minutes to present to appt" because he was "having trouble sleeping lately," and that he was "sleepy/not focused, due to his patchy sleep patterns, and his joint pain that he states is unbelievable at times." (PageID.2329). On December 1, 2020, Plaintiff "was sleeping when writer arrived," he presented "as sleepy at first," and that he stated that he had "immediate needs," including food deliveries, which were "critical." (PageID.2327).

In sum, the ALJ's conclusion that Plaintiff did not need additional limitations because Easter Seals treatment notes indicated he was at one time "able to ride his bike" despite his clavicle and rib injuries, without accounting for significant evidence to the contrary in subsequent Easter Seals treatment notes documenting Plaintiff's deteriorating condition, increasing pain, and apparent inability to ride a bike as a coping mechanism as he once did, reflects a selective parsing of the record evidence that is impermissible. Thus, this aspect of the ALJ's decision is also not supported by substantial evidence.

Finally, in addition to the evidence favorable to Plaintiff detailed above, the record as a whole contains additional evidence indicating persistent issues with Plaintiff's clavicle and rib fracture causing limited range of motion and significant pain in his shoulders and forearms, particularly when it involves an increase in physical activity. (*See, e.g.*, PageID.2176 (BFMC treatment note on January 9, 2020, indicating "stabbing" pain and

14

"intermittent numbness in the right 4th and 5th digits and medial aspect of the forearm," and recommending that he continue wearing a sling); PageID.2173 (physical exam on January 20, 2020, finding positive skin tenting on right mid clavicle and decreased ROM with 2/2 pain in right shoulder); PageID.2277 (treatment note in March 2020, indicating temporary significant improvement and relief "for 1 week" but then "pain returned with more activity"); PageID.2268, 2273 (treatment note in September 2020 noting persistent paresthesias in bilateral forearms with shooting pain, feeling of numbness and pins and needles, pain radiating from his neck, and a physical exam finding "palpable abnormality of proximal/mid right clavicle and a firm bony lump, subtle limitation in his right shoulder elevation"); PageID.2260 (recommendation in September 2020 to obtain EMG of Plaintiff's right upper extremities due to shooting pain and "numbness/pins and needles sensation"); PageID.1557-58, 1571-73 (ALJ Hearing testimony that Plaintiff is unable to reach out in front of him, cannot lift a hammer, washes plates with his left hand, as well as the ALJ's observations that Plaintiff was visibly guarding his arm, had limited arm movement, and could only raise his arm up to his waist); PageID.1827-32 (function report indicating difficulties with reaching due to physical pain "all the time").

To the extent the Commissioner argues that the ALJ considered "the very evidence cited in [Plaintiff's] brief," it is well settled that a mere recitation or acknowledgement of evidence in the record does not explain how it affected Plaintiff's functional limitations. *See Tina P. v. Comm'r of Soc. Sec.*, 2024 WL 1660527, at *14 (E.D. Mich. Apr. 17, 2024) ("But simply reciting this additional evidence does not explain how the ALJ concluded Tina's headaches caused no functional limitations. Merely acknowledging this evidence

15

does not explain why Tina's headaches did not cause functional limitations.").

In sum, none of the three reasons the ALJ gave as support for Plaintiff's reaching limitations – "routine healing" and the "alignment" of the right clavicle, "healed" right rib fractures, and an ability to ride his bike – are supported by substantial evidence. Thus, while the Court expresses no view on whether the ALJ might ultimately determine the same reaching limitations apply, remand is required so that a proper evaluation of that issue can be made.[9]

## V.  Conclusion

For the foregoing reasons, the Commissioner's Motion for Summary Judgment **(ECF No. 14)** is **DENIED**, Plaintiff's Motion for Summary Judgment **(ECF No. 12)** is **GRANTED** to the extent it seeks remand, and pursuant to sentence four of 42 U.S.C. § 405(g), this case is **REMANDED** for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED.**

Dated: March 17, 2025  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

---

[9] The Court notes that Plaintiff also argues that the ALJ erred in finding no limitations associated with his right hand (ECF No. 12, PageID.2607-12), and that the Commissioner responds that substantial evidence supports the ALJ's conclusion in this respect because "despite reports of paresthesia and tremor in some of his fingers on his right hand, objective examinations showed joint tenderness but no sensory or strength deficits" (ECF No. 14, PageID.2633-34). While the Court need not discuss in detail the merits of these arguments, it is worth noting that the ALJ appears to have similarly failed to address significant, relevant evidence in the record in this regard, including that Plaintiff's osteoarthritis of his MCP joint was severe enough for Dr. Lawson to consider a referral to a hand surgeon for further evaluation (PageID.2264), and that Plaintiff had a long history of breaking his wrist since he was a child and uses a prescription brace (PageID.2341, 2489).

## CERTIFICATE OF SERVICE

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 17, 2025.

                                            s/Eddrey O. Butts
                                            EDDREY O. BUTTS
                                            Case Manager